UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CEASAR DUNCAN,

Plaintiff,

v.

T.L. CAMPBELL, et al.,

Defendants.

Case No. 1:24-cv-00970-HBK (PC)

ORDER GRANTING DEFENDANTS TUANU'U AND GARZA'S EXHAUSTION-BASED MOTION FOR SUMMARY JUDGMENT[1]

(Doc. 37)

Pending before the Court is the exhaustion-based motion for summary judgment ("MSJ") filed on behalf of Defendants V. Tuanu'u and E. Garza on February 3, 2026. (Doc. 37). Plaintiff opposed the motion and Defendants replied. (Docs. 38, 39). For the reasons below, the Court grants Defendants Tuanu'u and Garza's exhaustion-based MSJ.

BACKGROUND

Plaintiff Ceasar Duncan, a prisoner, proceeds on his First Amended Complaint ("FAC") as screened, alleging: (1) an Eighth Amendment claim for excessive use of force against Defendants Musselman, Vega, Virdi, Sanchez, and Juarez; (2) an Eighth Amendment failure to intervene claim against Defendants Musselman, Robles-Ayala, Alvarez, and Zepeda; and (3) a

[1] The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). (Doc. 22).

First Amendment retaliation claims against Defendants Hernandez, Ozuna, Huerta, Silva, Rodriguez, Garza, Cantu, and Tuanu'u. (Docs. 10, 11, 12, 13).

By way of background, the FAC alleges that on December 9, 2022, Defendants Juarez, Musselman, Sanchez, Vega, Robles-Ayala, and Virdi approached Plaintiff's locked cell and signaled for it to be opened. The door initially failed due to an improvised lock created by Plaintiff, but staff ultimately forced it open as Plaintiff moved to remove it. Defendant Juarez then grabbed Plaintiff's wrist, slammed him to the concrete, twisted his leg and foot, and caused him pain. Defendants Virdi, Sanchez, and Vega joined in, repeatedly striking Plaintiff, who states he did not resist and suffered over 30 blows to his head and neck. Juarez also held Plaintiff's head and struck it twice with his knee. Meanwhile, Defendants Musselman, Robles-Ayala, Alvarez, and Zepeda allegedly observed the assault without intervening. Plaintiff was eventually restrained, evaluated, and transported to a hospital.

Immediately after the incident, Plaintiff reported to Defendant Hernandez that excessive force had been used and requested review of available video footage. Plaintiff alleges Hernandez instead ordered staff to charge him with battery on a police officer without reviewing the footage and directed Defendants Juarez, Virdi, Vega, and Sanchez to falsify reports. Plaintiff further alleges Defendants Ozuna, Huerta, Silva, Rodriguez, Garza, and Cantu approved these reports without investigation. Plaintiff was later found not guilty of the charge at a disciplinary hearing on January 12, 2023.

Plaintiff also claims retaliation following his return from the hospital. After Plaintiff reported the incident and requested video review to Defendants Rodriguez and Tuanu'u, Defendants Rodriguez and Tuanu'u placed him in administrative segregation, which he alleges was done in retaliation for reporting misconduct.

Relevant to the MSJ, Plaintiff proceeds on a First Amendment retaliation claim against Tuanu'u and Garza arising from events after a December 9, 2022 use-of-force incident. Specifically, he alleges Garza approved false documents without reviewing video footage and Tuanu'u approved Plaintiff's placement in administrative segregation after Plaintiff complained about staff misconduct.

PARTIES' POSITIONS

A. Defendants' Exhaustion-Based Motion for Summary Judgment

Defendants V. Tuanu'u and E. Garza filed the instant exhaustion-based MSJ on February 3, 2026. (Doc. 37). In support, Defendants submit a Memorandum of Points and Authorities (Doc. 37); the Declaration of California State Prison Corcoran Grievance Coordinator A. Vasquez (Doc. 37-1), with Grievance Log. No. 339447 (Exh. 1), the Office of Grievances' decision regarding Grievance Log. No. 339447 (Exh. 2), Grievance Log. No. 356654 (Exh. 3), the Office of Grievances' decision regarding Grievance Log. No. 356654 (Exh. 4) and the Rule Violations Report referenced in Grievance Log. No. 356654 (Exh. 5); a Statement of Undisputed Material Facts (Doc. 37-2); and a *Rand* warning (Doc. 37-3).

Defendants argue that Plaintiff submitted only two grievances regarding the events giving rise to his claims and that neither grievance exhausted administrative remedies as to his First Amendment retaliation claims against Tuanu'u and Garza. They contend Grievance Log. No. 339447 addressed the excessive force claim against the non-moving defendants, and Grievance Log. No. 356654, though identifying other correctional officers, did not identify Tuanu'u and Garza or include any allegations that could have placed correctional officials on notice of a claim against them. (Doc. 37 at 9-10, 14-17).

B. Plaintiff's Opposition to Defendants' Exhaustion-Based MSJ

Plaintiff filed an opposition to the MSJ on February 24, 2026, along with a response to Defendants' Statement of Undisputed Material Facts. (Doc. 38). Plaintiff argues summary judgment should be denied because there are genuine disputes of material fact as to: (1) exhaustion; (2) supervisory liability; and (3) retaliatory adverse actions through deliberate inaction and obstruction. (*Id.* at 1).

Regarding exhaustion, Plaintiff argues Grievance Log. No. 339447 sufficiently provided notice that the grievance was being brought against Defendants Tuanu'u and Garza because it stated, "These actions were taken by a bunch of rogue C.O.'s who are encouraged by their sergeant's, lieutenant's, captain to beat inmates at will in violation of state and civil law . . ." (*Id.* at 2-3). Plaintiff does not address Grievance Log. No. 356654. (*See generally id.*).

C. Defendants' Reply in Support of their Exhaustion-Based MSJ

In their reply, Defendants argue that Plaintiff's arguments regarding supervisory liability and retaliatory adverse actions through deliberate inaction and obstruction are irrelevant to the exhaustion issue presented by the MSJ. (Doc. 39 at 1). They further contend that the statement Plaintiff cites in Grievance Log. No. 339447 does not suffice to exhaust administrative remedies as to his First Amendment retaliation claim against Tuanu'u and Garza. (*Id.* at 2-3).

Defendants argue that Grievance Log. No. 339447 does not mention Tuanu'u or Garza and addresses only the excessive force claim, with no reference to retaliation. (*Id.* at 2-4). They also submit that Plaintiff's failure to rely on the second grievance implicitly concedes that it did not exhaust his claims against Tuanu'u and Garza. (*Id.* at 2 n.1).

APPLICABLE STANDARD AND LAW

A. Summary Judgment

"The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. A dispute of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to return a verdict for the non-moving party, and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden shifts to the opposing party to present specific facts showing a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party must present evidence of specific facts, by affidavit, or admissible discovery material, demonstrating a genuine dispute. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

The opposing party need not conclusively establish a material act in its favor; it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply Rule 56 standards to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson.*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of

persuasion remains, however, with defendant. *Id.*

B. Exhaustion Under the PLRA

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life," including *Bivens* claims. *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no judicially exceptions to the exhaustion requirement, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. Remedies are considered unavailable when: (1) the administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the scheme is "so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

A prison's internal grievance process determines whether a grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate must exhaust available remedies but is not required to exhaust unavailable remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id*. (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). Accordingly, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. Defendants bear the burden to prove that an available administrative remedy existed and that the prisoner failed to exhaust it. *Albino*, 747 F.3d at 1172.

Once that burden is met, "the prisoner has the burden of production" to come forward with evidence that the generally available administrative remedies were effectively unavailable to him. *Id.* If the Court concludes that a prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

C. CDCR Custody Grievance Process

For grievances received by prison officials on or after June 1, 2020, the California prison grievance system has two levels of review. Cal. Code Regs. tit. 15, §§ 3480-3487.[2] Section 3481(a) permits an inmate to "submit a written grievance containing one or more claims . . . to dispute a policy, decision, action, condition, or omission by the department or departmental staff." *Id.*, § 3481(a). Section 3482(c) requires an inmate to follow this procedure when submitting a grievance: (1) type or print legibly on an official CDCR 602-1 (03/20) form or complete the form electronically if available; (2) describe all information known and available regarding the claim, including key dates and times, names and titles of all involved staff (or a description of those staff) and witnesses, to the best of the claimant's knowledge; (3) describe any attempt to resolve the claim informally, including key dates, times, names, titles, and results; (4) include all supporting documents available or sufficiently identify relevant records; and (5) sign and date the CDCR 602-1 form. Cal. Code Regs. tit. 15, § 3482(c)(1)–(5). An inmate must submit a grievance within 60 days of the incident being challenged. *Id.* § 3482(b).

Once an inmate has submits a CDCR 602-1, the Institutional or Regional Office of Grievances ("OOG") must issue a written decision that clearly explains the reasoning as to each claim in the grievance. Cal. Code Regs. tit. 15, § 3481(a). Within 60 days of the OOG decision, the inmate may appeal to the Office of Appeals ("OOA"), which must also provide a written decision clearly explaining its reasoning as to each claim. Id., §§ 3481(a), 3484. The grievance is exhausted once the OOA completes its review. *Id.*, § 3485(l)(5).

---

[2] Effective January 22, 2026, various subsections of California Code of Regulations Title 15, sections 3480 through 3487 were amended. All the citations in this order are to the regulations in place in 2022 and 2023, the relevant period for this action.

The regulations impose two principal timing constraints. First, an official who receives a grievance at either the OOG or OOA level must provide a notice of receipt within 14 days, which must include the date of receipt and the response deadline. *Id.*, §§ 3483(c), 3485(c). Second, both the OOG and OOA must issue written responses within 60 days of receipt, unless a shorter time is mandated by other law. *Id.* §§ 3483(g), 3486(g).

MATERIAL FACTS RELEVANT TO EXHAUSTION

After reviewing the record, the Court finds the following material facts undisputed:

- At all relevant times, Plaintiff was in incarcerated in CDCR custody and housed at California State Prison, Corcoran (Corcoran). (Doc. 10 at 3).
- Defendant Garza was a Correctional Captain at Corcoran, and Defendant Tuanu'u was a Correctional Sergeant at Corcoran. (Doc. 10 at 4).
- Plaintiff's operative complaint alleges a First Amendment retaliation claim against Tuanu'u and Garza based on events following a December 9, 2022 use-of-force incident. Specifically, Plaintiff alleges Garza signed off on allegedly fraudulent documents without reviewing video footage, and that Tuanu'u refused to review video footage before signing an administrative segregation placement order. (Doc. 10; Doc. 11 at 13).
- During the relevant period, CDCR maintained a two-level administrative grievance process (institutional review by the Office of Grievances (OOG) and headquarters review by the Office of Appeals (OOA)) that required incarcerated persons to identify involved staff by name or description and that exhausted claims and officials identified once final decisions issued or staff-misconduct grievances were referred for investigation. (Vasquez Decl. at ¶¶ 1, 2, 3, 5).
- Between December 12, 2022 and February 8, 2023, Plaintiff submitted two grievances related to the December 9 incident: Grievance Log No. 339447 and Grievance Log No. 356654. Both grievances were accepted and processed by the OOG. (Vasquez Decl. at ¶¶ 1, 2, 3, 5, Exhs. 1-4).

- Grievance No. 339447 alleged that correctional officers used excessive force on December 9, 2022. It did not identify Tuanu'u or Garza by name or description, and did not raise a retaliation or administrative-segregation claim. (Vasquez Decl. at ¶ 7, Exh. 1).
- Grievance No. 356654 alleged excessive force, a fabricated rules violation report, and placement in administrative segregation and identified several staff members by name. (Vasquez Decl. at ¶ 7, Exh. 3).
- The OOG treated both grievances as allegations of staff misconduct and referred them outside the grievance and appeal process, which exhausted administrative remedies as to the claims and officials identified in those grievances. (Vasquez Decl. at ¶ 8, Exhs. 2, 4).

## DISCUSSION

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Any omission of an argument, document, or objection in this Order should not be construed as a failure to consider it. The Court has reviewed and considered all evidence it deemed admissible, material, and appropriate for purposes of this Order.

### A. There is No Dispute that Remedies were Available

As noted above, an inmate must exhaust available remedies but need not exhaust unavailable ones. *Albino*, 747 F.3d at 1171. Here, there is no dispute that remedies were available to Plaintiff. He submitted two grievances and does not argue that any remedies were unavailable. (*See generally* Doc. 38). The Court therefore finds that administrative remedies were available to Plaintiff.

### B. Grievance No. 339447 Did Not Exhaust Claims Against Tuanu'u and Garza

To exhaust administrative remedies, a grievance must "describe[] all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge." Cal. Code. Regs. tit. 15, § 3482(c)(2).

It is undisputed that Plaintiff did not name Defendants Tuanu'u or Garza in Grievance No. 339447. (Vasquez Decl. ¶ 7, Exs. 1–2). Plaintiff nonetheless argues the grievance gave sufficient notice that it was brought against them because it stated: "These actions were taken by a bunch of rogue C.O.'s who are encouraged by their sergeant's, lieutenant's, captain to beat inmates at will in violation of state and civil law . . ." (Doc. 38 at 2-3).

The Ninth Circuit has held that a grievance may exhaust remedies as to an unnamed individual where the grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit." *Reyes v. Smith,* 810 F.3d 654, 659 (9th Cir. 2016). In *Reyes*, the grievance alerted prison officials to the same pain-related claim raised in the federal suit, and both the first-level and appeal decisions addressed the merits of that claim and referred to the Pain Management Committee even though plaintiff had not named its members. *Id.* at 656, 659. The prison officials' responses made clear they recognized the allegations against unnamed committee members and chose not to enforce the naming requirement, effectively opting out of it. *Id.* at 658.

This case is materially different. Grievance No. 339447 concerns only Plaintiff's excessive force allegations, whereas the claim against Defendants Tuanu'u and Garza is a First Amendment retaliation claim based on events after the use-of-force incident. (Vasquez Decl. ¶ 7, Exs. 1–2; Doc. 11 at 8–9). There is nothing in the grievance or any appeal indicating that Plaintiff was complaining of retaliation. (*See* Doc. 37-1 at 6–9). The appeal identifies the subject solely as "excessive force." (Doc. 37-1 at 8). The OOG's decision likewise does not suggest that officials understood the grievance to encompass retaliation or claims against Tuanu'u or Garza, nor does it indicate that they chose to waive the Title 15 requirement that Plaintiff identify the involved staff. (*See* Doc. 37-1 at 11).

Accordingly, Grievance No. 339447 did not exhaust Plaintiff's administrative remedies as to Defendants Tuanu'u and Garza.

C. <u>Grievance No. 356654 Did Not Exhaust Claims Against Tuanu'u and Garza</u>

Plaintiff does not contend that Grievance No. 356654 exhausted his claims against Defendants Tuanu'u and Garza. (*See generally* Doc. 38). There is no mention of Tuanu'u or Garza in either the grievance or the RVR it references. (Doc. 37 at 13-14, 18-21). While the

grievance explicitly identifies staff members including H. Hernandez, I. Virdi, J. Juarez, A. Vega, I. Sanchez, R.Silva, R. Ozuna, Lt. Huerta, P. Rodriguez, E. Cantu, and Lt. Espinoza, Plaintiff neither explicitly nor implicitly refers to Tuanu'u and Garza. (*Id.* at 13-14). As to Tuanu'u and Garza, Grievance No. 356654 therefore fails to comply with Cal. Code. Regs. tit. 15, § 3482(c)(2).

For the same reasons, *Reyes* does not assist Plaintiff. Unlike in *Reyes*, the grievance responses here do not show that prison officials identified a claim against unnamed staff and decided it on the merits despite any defect in naming. (Doc. 37-1 at 15-21).

Because Plaintiff did not exhaust available administrative remedies as to Tuanu'u and Garza before filing suit, his First Amendment retaliation claims against them must be dismissed without prejudice.

Accordingly, IT IS ORDERED:

1. Defendants Tuanu'u and Garza's exhaustion-based motion for summary judgment (Doc. 37) is GRANTED.
2. Plaintiff's First Amendment retaliation claims against Defendants Tuanu'u and Garza are dismissed without prejudice for failure to exhaust administrative remedies.
3. The Clerk of Court is directed to terminate Defendants Tuanu'u and Garza from this action.

Dated: July 7, 2026

Helena M. Barch-Kuchta
HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE